# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

NINA SHAHIN,                          :
                                      :
            Plaintiff,                :
                                      :
      v.                              :      Civ. No. 10-188-LPS
                                      :
STATE OF DELAWARE DEPARTMENT :
OF FINANCE,                           :
                                      :
            Defendant.                :

---

Nina Shahin, Pro Se, Dover, Delaware.

      Plaintiff.

Laura L. Gerard and Stuart B. Drowos, Deputy Attorneys General, Delaware Department of
Justice, Wilmington, Delaware.

      Attorneys for Defendant.


## MEMORANDUM OPINION


August 8, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Nina Shahin ("Plaintiff" or "Shahin") filed this action against Defendant the State of Delaware Department of Finance ("Defendant") alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 629, *et seq.*; the Americans with Disabilities Act ("ADA"); the Delaware Discrimination in Employment Act ("DDEA"), as amended, 19 Del. C. § 710, *et seq.*; and the Delaware Handicapped Persons Employment Protection Act ("DHPEPA"), 19 Del. C. § 720, *et seq.* (D.I. 2) The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367. Presently before the Court are the parties' cross-motions for summary judgment (D.I. 60, 62), as well as Plaintiff's motion for sanctions (D.I. 68). For the reasons that follow, the Court will grant Defendant's motion and will deny Shahin's motions.

## II. PROCEDURAL BACKGROUND

Shahin filed a charge of discrimination with the Department of Labor of the State of Delaware ("DDOL") on January 7, 2009. (D.I. 21 Ex.) Shahin applied for the position of State Accountant IV on April 26, 2008 and was interviewed for the position on June 2, 2008. She contacted Defendant on October 30, 2008 regarding her status in the application process but failed to obtain an answer clarifying her status. She made another inquiry on October 31, 2008. Defendant's website indicated that the position remained open, but Defendant failed to hire Shahin or advise her of her status. Shahin asserted that she was a qualified individual with a disability who could perform the essential functions of the job in question either with or without

1

an accommodation. The charge of discrimination stated that Defendant failed to hire her based upon her disability, age, national origin (Ukrainian), and in retaliation for filing previous charges of discrimination. The DDOL found no reasonable cause to believe than an unlawful employment practice had occurred, and a notice of right to sue issued on December 7, 2009. (D.I. 2 Ex.) Plaintiff filed this action on March 8, 2010. (D.I. 2)

Thereafter, following a motion to dismiss filed by Defendant, the Court dismissed the ADA and ADEA claims with prejudice and gave Shahin leave to amend. (D.I. 15) She filed an amended complaint on July 1, 2011, alleging Defendant failed to hire her in violation of Title VII, ADA, ADEA, DDEA, and DHPEPA on the bases of age and disability discrimination and retaliation. (D.I. 18) Defendant moved to dismiss the amended complaint. The retaliation, discrimination on the basis of national origin, and the DDEA claims survived the motion to dismiss, while all other claims were dismissed. (D.I. 25) The parties now move for summary judgment. In addition, Shahin moves for sanctions. (D.I. 23)

## III.   **FACTUAL BACKGROUND**

In April 2008, the Department of Finance's Division of Human Resources posted and advertised an opening for the position of State Accountant IV Help Desk Manager.[1] (D.I. 64 at A-3) The position was summarized as follows:

> This employee will be a key person to assist in the determination
> [sic] the state's needs and plans for the State of Delaware's
> Financials ERP Project Help Desk prior to system implementation.
> The successful candidate will develop and implement initiatives,
> plans, programs and systems to meet the state's needs and
> participate in the hiring of staff. The employee will manage

---

[1]The Department of Finance is a Cabinet-level agency of the State of Delaware. *See* 29 Del. C. § 8301 et seq.

2

> approximately 13 staff upon "Go-Live" of the system and be
> responsible for leading and providing financials help desk services
> statewide.

(D.I. 61 Ex. A at Ex. 1) According to Cheryl Sipple ("Sipple"), who participated in the hiring

process for the position at issue, the position focused more on service help desk and management

experience, not merely accounting experience or ability. (D.I. 61 Ex. A at 60-64; D.I. 64 at A-3)

The person who filled the position would manage and supervise a team of help desk staff trained

specifically to monitor and respond to incoming help requests from any of the 4,000 end-users

throughout the State for any of the eleven modules being used in the First State financials system.

(D.I. 64 at A-2) Applicants were compared on a number of factors, including interview

questions, and the applicants were compared to others in the applicant pool. (*Id.*) The

applications for vacant positions are received online, via the U.S. Postal Service, hand delivered,

and/or through state mail. (*Id.*) The applications were reviewed by the Department of

Finance/Division of Human Resource staff and thereafter applicants were deemed qualified or

not qualified for the position applied for based upon the application, supplemental questionnaire,

and resume (if submitted by the applicant). (*Id.*)

Sipple's superior, described as the functional manager, identified interview panels for

rounds one and two of the interview process. (*Id.*) The interview panels consisted of a male, a

female, and a person of "ethnic" origin. (*Id.*) The second round panel usually included the hiring

manager for the posted position. (*Id.*) The functional manager, assisted by the hiring manager,

compiled interview questions relative to the specific position posted. (*Id.*) The interview panels

and interview questions were submitted for approval to the Director of Human Resources for the

Department of Finance. (*Id.*) Following approval, a certification list of qualified applicants was

3

sent to the functional manager. (*Id.*) Neither the functional manager nor the interview panels are aware of applicants who did, or did not, qualify for the open position. (*Id.* at A-2, A-3) Based upon the number of applications received, the functional manager typically reviewed the applications to determine the applicants selected for interviews. (*Id.* at A-3)

On February 6, 2008, Shahin applied for the limited-term position of State Accountant IV with the Department of Finance.[2] (D.I. 63 Ex. A at Ex. 6) Shahin was included on the certification list prepared and selected for the first round of interviews. (D.I. 64 at A-2, A-3) Eight other applicants were also selected for the first round of interviews. (D.I. 37, Answer to Interrog. No. 4) Interviews were scheduled and the interview panel members were provided with the applications selected for interview and interview questions. (D.I. 64 at A-3) The round one interview panel members included Dawn Haw-Young ("Young"), Sipple, and Vernard Wilkerson ("Wilkerson").[3] (D.I. 37, Answer to Interrog. No. 94)

The first round of interviews took place in June 2008. (D.I. 64 at A-3) The applicants interviewed in round one were asked the same questions. (D.I. 62 Ex. A at 56) Each panel member took his or her own notes and individually scored each applicant based upon the applicant's responses to the questions posed during the interview. (D.I. 64 at A-3) Once the interviews were complete, each interview panel member submitted his or her respective scores to the Human Resources Representative on the interview panel. (*Id.*) The Human Resources Representative submitted the scores from the three panel members to the Division of Human

---

[2]The position was for a limited term not to exceed one year. (*See* D.I. 61 Ex. A at Ex. 1)

[3]According to Shahin, Wilkerson "apparently died in May of 2013." (D.I. 61 at 3)

4

Resources, and the scores were used to determine how many, and which of the applicants, would be interviewed in the second round of interviews. (*Id.*)

Shahin did not advance to the second round of interviews. Shahin has two Master of Science degrees (one in taxation and one in accounting), accounting and taxation experience, and experience as a professor. (D.I. 61 Ex. A at Ex. 6) Sipple testified that, while Shahin was a qualified candidate, she did not meet the requirements needed for the service desk manager position. (D.I. 62 Ex. A at 64) Sipple testified that during her interview, when asked about service desk operations, Shahin spoke about being a professor and teaching accounting/tax courses. (*Id.* at 61) Sipple stated that the job was "not for a tax instructor or a tax preparer. This job was a service desk manager." (*Id.*)

The successful candidate was Tamika Leveridge ("Leveridge"), a 39-year old African-American female, who was one of the top three candidates from the round one interview, was brought back for a second interview, and hired for the position. (D.I. 37 Answer to Interrog. No. 8) Leveridge has a Bachelor's Degree in accounting, met the functional accounting skills, and possessed experience overseeing a service help desk. (D.I. 37 Answer to Interrog. No.5; D.I. 40 at 10-188 149 to 164; D.I. 51 Ex. A at 61-64 and Ex. C at 13)

Sipple, who interviewed Shahin, did not know of Shahin's Ukrainian descent prior to the initial interview. (D.I. 64 at A- 3) According to Sipple, the information would not have affected her hiring decision had Shahin been qualified for the position. (*Id.*) In addition, Sipple was unaware that Shahin had filed prior complaints with the Equal Employment Opportunity Commission ("EEOC"). According to Sipple, this, too, would not have affected her decision to interview or possibly hire Shahin were she qualified. (*Id.*)

5

## IV. MOTION FOR SANCTIONS

Shahin moves for sanctions (D.I. 68) against defense counsel pursuant to Fed. R. Civ. P. 11(b) on the grounds that they filed a motion for summary judgment without having any basis in fact or law to do so, for harassing her during the depositions of witnesses, and for providing "cover up" for perjury allegedly committed by two witnesses. Defendant opposes the motion.

The Court has reviewed Plaintiff's motion and finds it frivolous. Defense counsel has taken no action to warrant the imposition of Rule 11 sanctions. Accordingly, the Court will deny the motion.

## V. SUMMARY JUDGMENT

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for

6

trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. The

7

same standard applies when there are cross-motions for summary judgment. *See Lawrence v. City of Philadelpha, Pa.*, 627 F.3d 299, 310 (3d Cir. 2008).

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Shahin moves for summary judgment on the grounds that: (1) she established a prima facie case of discrimination based upon national origin, sex, and age; and (2) Defendant's proffered explanation for the failure to hire her is unworthy of credence. Defendant moves for summary judgment on the grounds that: (1) Shahin failed to establish a prima facie case of national origin discrimination; (2) Shahin failed to establish a prima facie case of retaliation; (3) because Shahin chose to pursue her claims in federal court, the claims under Delaware law should be dismissed; and (4) Shahin failed to exhaust administrative remedies with regard to the sex discrimination claim.

## B.  Discussion

### 1.  National Origin Discrimination

Defendant seeks summary judgment as to Shahin's national origin discrimination claim on the grounds that Shahin failed to establish a prima facie case of discrimination and, alternatively, that it has articulated a legitimate, nondiscriminatory reason for selecting the candidate it did.

8

Shahin has provided no direct evidence of discrimination. Thus, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Shahin must first establish a prima facie case of discrimination by proving that: (1) she is a member of a protected class; (2) she sought and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003); *accord Iyer v. Everson*, 238 F. App'x 834 (3d Cir. Aug. 3, 2007).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to proffer "legitimate non-discriminatory" reason for its actions. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804.

Shahin alleges discrimination occurred after she applied for the State Accountant IV Help Desk Manager position and was interviewed, but was not called back for a second interview, and a less qualified person was hired for the position. However, Shahin has failed to provide sufficient evidence of circumstances raising an inference of discriminatory action. *See Sarullo*, 352 F.3d at 789-90. It is undisputed that Shahin is a female and is of Ukrainian origin and that she was not selected for a second interview or hired for the State Accountant IV Help Desk Manager position. But she rests her evidence of discrimination solely upon her own assertion that she was not hired because of her national origin when there is no evidence to support her

claim. Indeed, the record does not include any evidence that Defendant, or its employees who were involved in the employment process, were even aware of Shahin's national origin. Shahin makes the leap from an unsuccessful employment application to employment discrimination based upon her national origin when there is no evidence of record to support an inference of discrimination. *See Iyer*, 238 F. App'x at 836 (unsuccessful applicant for position did not establish prima facie case of discrimination because he did not present evidence of circumstances that raised an inference of discriminatory action; he did not establish causal nexus between his membership in protected class and employer's decision not to hire him).

Alternatively, even if Shahin could make out a prima facie case of national origin discrimination, she has not produced evidence from which a reasonable juror could find that Defendant's reason for its employment decision was a pretext for discrimination. When a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant-employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *See McDonnell Douglas*, 411 U.S. at 804. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory

10

reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (internal citations and quotation marks omitted).

Defendant met its burden by articulating a legitimate, nondiscriminatory reason for not hiring Shahin. The successful candidate was hired based upon the determination that she was more suitable and better qualified for the position. In addition, the successful applicant had prior experience operating at a service desk and supervising individuals, both essential functions for the State Accountant IV Help Desk Manager position. Nothing before the Court contradicts Defendant's proffered reason for its failure to interview Shahin a second time or to hire her. Nor is Defendant's proffered reason for its action weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find it unworthy of credence. *See Sarullo*, 352 F.3d at 800. Even construing the evidence in the light most favorable to Shahin, she has provided no evidence from which a fact-finder could either disbelieve Defendant's articulated reason, or believe that a discriminatory reason was more likely than not the cause of the employment action. As there is no genuine dispute on the dispositive legal issue of whether Defendant had a discriminatory motive, the Court will grant Defendant's motion for summary judgment and will deny Shahin's motion for summary judgment on the issue of national origin employment discrimination.

11

## 2. **Retaliation**

Shahin alleges that she was not hired by Defendant in retaliation for previously filed charges of discrimination. To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) the employer took a materially adverse action against her; and (3) there was a causal connection between the protected activity and the employer's action. *See LeBoon v. Lancaster Jewish Comty, Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). Here, no reasonable juror could find for Shahin on the retaliation issue.

There is no evidence that Defendant, or any of its employees, had knowledge that Shahin had filed prior charges of discrimination or that their hiring decisions were in any way influenced by a prior charge of discrimination. Because there is no evidence of a nexus between the filing of a charge of discrimination and Defendant's hiring decision, the retaliation claim fails. Accordingly, the Court will grant Defendant's Motion for Summary Judgment on the retaliation issue.[4]

## 3. **Exhaustion**

With regard to the sex discrimination claim, summary judgment for Defendant is proper because Shahin failed to exhaust her administrative remedies. After a plaintiff files a charge of discrimination against an employer and subsequently receives a right-to-sue letter, a plaintiff's "ensuing suit [in district court] is limited to claims that are within the scope of the initial administrative charge." *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. Jan. 20, 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). To determine the "scope" of the charge, a court must consider the extent of the investigation that "can reasonably be expected

---

[4]Shahin did not move for summary judgment on the retaliation issue.

to grow out of the [EEOC] charge." *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("[A] district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges."). Accordingly, a plaintiff cannot "greatly expand an investigation simply by alleging new and different facts" when later bringing claims in the district court. *Hicks,* 572 F.2d at 967.

Shahin's charge of discrimination asserts national origin, retaliation, age, and disability discrimination. It makes no mention of sex discrimination, which is raised for the first time in the complaint. Given that the charge of discrimination does not even hint at sex discrimination, it cannot be said that the sex discrimination claim is properly raised in the complaint. Even liberally interpreting Shahin's charge of discrimination, a reasonable investigation of Shahin's charges of national origin, retaliation, and age discrimination would not have encompassed the claim of sex discrimination. Shahin's failure to exhaust her administrative remedies therefore precludes her from bringing a sex discrimination claim before this Court. Accordingly, the Court will grant Defendant's motion for summary judgment and will deny Shahin's motion for summary judgment on the issue of discrimination by reason of sex.

### 4. **Delaware Discrimination in Employment Act**

Defendant moves for summary judgment on Shahin's DDEA claim. Under the DDEA, employment discrimination is prohibited with respect to the protected classes of race, marital status, genetic information, color, age, religion, sex and national origin. *See* 19 Del. C. § 711(a)(1).

The Court has determined that summary judgment is appropriate as to Shahin's federal

13

claims raising national origin and sex discrimination and retaliation. In addition, the Court previously dismissed with prejudice Shahin's claims of age, and disability discrimination raised under federal law.[5] *(See* D.I. 15, 25) In light of the foregoing, the Court will exercise its discretion and will decline to exercise supplemental jurisdiction over the DDEA claims. *See* 28 U.S.C. § 1367(c); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (noting purely discretionary abuse of standard of review); *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003).

## VI. CONCLUSION

For the above reasons, the Court will deny Plaintiff's Motion for Summary Judgment (D.I. 60), grant Defendant's Motion for Summary Judgment (D.I. 62), and deny Plaintiff's Motion for Sanctions (D.I. 68). The Court will decline to exercise supplemental jurisdiction over any state claims.

An appropriate Order follows.

---

[5]To the extent that Shahin seeks summary judgment under the DDEA for alleged age discrimination, the Court finds it similar to the claim of national origin discrimination in that Shahin failed to establish a prima facie case of age discrimination and, even if she had, Defendant provided a legitimate nondiscriminatory reason for its failure to hire her. *See Fowle v. C & C Cola*, 868 F.2d 59, 61 (3d Cir. 1989) (holding that prima facie case of age discrimination requires plaintiff to show that: (1) she belongs to the protected class; (2) she applied for and was qualified for the job; (3) despite her qualifications she was rejected; and (4) the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications).